IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| ALVIN BENEFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:18-cv-01014-LSC |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF OPINION**

**I. Introduction**

The plaintiff, Alvin Benefield, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB"). Benefield timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Benefield was 51 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education. (Tr. at 89, 364.) His past work experience includes employment as a maintenance mechanic and landscape

1

worker. (Tr. at 54-55.) Benefield claims he became disabled on June 20, 2014, as a result of several conditions, but generally impairments involving his back, knees, seizures, and anxiety. (Tr. at 363-64.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *Id.* The decision depends on the medical evidence contained in the

2

record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. *Id.*

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff

can make an adjustment to other work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Benefield last met the insured status requirements of the Social Security Act on June 30, 2015. (Tr. at 23.) He further determined that Benefield "did not engage in SGA during the period from his alleged onset date of June 20, 2014, through his date last insured of June 30, 2015." (*Id.*) According to the ALJ, Benefield's "degenerative disc disease, osteoarthritis, and seizure disorder" are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, the ALJ found that these impairments neither met nor medically equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 26.) He did not find Benefield's allegations to be totally credible, and the ALJ determined that Benefield has the following RFC:

> To perform light work as defined in 20 C.F.R. § 404.1567(b) except as part of the job requirement, the claimant is unable to climb ladders, ropes, or scaffolds. He is unable to perform around hazards. The claimant can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. He would need the opportunity to change postures from an

4

upright (standing or walking) posture to a seated posture at the will of the individual and the claimant could perform work activities regardless of the posture, and the change would not occur more frequently than every thirty minutes.

(Tr. at 28.)

According to the ALJ, Benefield "was unable to perform any of his past relevant work" through the date he was last insured. (Tr. at 32.) The ALJ also determined that Benefield is an "individual approaching an advanced age" at 52 years old. (*Id.*) The ALJ determined that the "transferability of job skills is not material to the determination of disability." (*Id.*) Because Plaintiff cannot perform the full range of light work, the ALJ enlisted a vocational expert ("VE") and used Medical-Vocation Rules as a guideline. (Tr. at 32-33.) The VE found that there are a significant number of jobs in the national economy that Benefield is capable of performing such as assembly machine tender, tab machine tender, and mold filler. (Tr. at 33.) The ALJ concluded his findings by stating that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from June 20, 2014, the alleged onset date, through June 30, 2015, the date last insured." (*Id.*)

**II. Standard of Review**

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607,

620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1989)).

## III. Discussion

Benefield claims that the ALJ's decision should be reversed and remanded because the ALJ improperly applied the pain standard by failing to articulate reasons in the record that discredit his subjective pain testimony.

Plaintiff's subjective complaints alone are insufficient to establish a disability. *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other

symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the pain standard is satisfied, the ALJ then evaluates the intensity and persistence of Plaintiff's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which the Plaintiff's symptoms, such as pain, affect his capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of Plaintiff's symptoms, (3) the Plaintiff's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of

8

symptoms, (7) any measures the Plaintiff takes to relieve symptoms, and (8) any conflicts between a Plaintiff's statements and the rest of evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p. In order to discredit Plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. "The question is not . . . whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Benefield stated that he stopped working in June 2014, due to his seizures and arthritis, but that his back and knee problems were the main

9

cause of his firing. (Tr. at 44-46, 363-65.) Benefield further stated that he could not stay on his feet very long and could not pick anything up due to his back and knee injuries. (Tr. at 51.) The ALJ noted that the impairments underlying Benefield's medical condition could be reasonably expected to cause his alleged symptoms and functional limitations, satisfying part of the pain standard. (Tr. at 29.) However, the ALJ found that Benefield's statements concerning the intensity, persistence, and limiting effects of these alleged symptoms were not entirely credible by pointing to explicit evidence that is inconsistent with his subjective complaints. (*Id.*) The ALJ covered a variety of evidence to support his conclusion, including objective medical evidence, treatment history, and daily activities. (Tr. at 29-31.) Substantial evidence supports the ALJ's conclusion in this case.

The ALJ began by noting that the objective medical evidence does not support the disabling symptoms and limitations alleged by Benefield. (Tr. at 29-31.) Benefield had an X-ray on his left knee in August 2011, where Dr. Homer Spencer, diagnosed Benefield with "mild to moderate" osteoarthritis. (Tr. at 452, 510.) After an X-ray of his right knee, Dr. Spencer diagnosed Benefield with only minimal osteoarthritis. (Tr. at 454, 511). Benefield also had a magnetic resonance imaging (MRI) done of his lumbar spine in August

2011, where Dr. Calvin Herring, a radiologist, diagnosed him with moderate abnormalities on multiple levels of his spine. (Tr. at 496-97, 505-06.) No limitations were placed on his functioning by Dr. Spencer or Dr. Herring. (Tr. at 452, 494.)

Then, Dr. Paul Muratta developed a treatment plan for Benefield that included prescription medications and injections for his symptoms in February, April, and May of 2012, based on the X-ray and MRI findings. (Tr. at 511-19.) On June 1, 2012, Dr. Michael Ruff ordered a new MRI which again showed only "mild to moderate" chronic compression fracture and multi-level degenerative change. (Tr. at 493-94.) Benefield was again treated with epidural steroid injections by Dr. Charles Carnel, on June 18, 2012. (Tr. at 501.) Dr. Carnel did not place any limitations on Benefield's functioning. (Tr. at 501.)

In 2013, Benefield had a computed tomography (CT) scan of his cervical spine, where Dr. Bradley Cochran, diagnosed him with degenerative disc disease. (Tr. at 578.) Also, in 2013, Benefield presented to Dr. Deepak Sree, who noted that he had a history of osteoarthritis and a history of degenerative joint disease of the lumbar spine. (Tr. at 554-56.) However, Dr. Sree further found that Benefield had no arthritic changes on examination

consistent with an inflammatory arthritis. (Tr. at 555.) Dr. Sree determined that Benefield should continue with his treatment injection plan and placed no restrictions on his functioning. (Tr. at 555-56.)

On January 15, 2014, Benefield presented to Tennessee Valley Pain, where it was found that he had a slow but normal gait with slight lumbar flexion, a mildly decreased range of motion of his bilateral lower extremities, and a mildly positive straight leg raising test result on his right side. (Tr. at 598-601.) Just 16 days later, Benefield presented to DeKalb Neurology & Sleep where it was found he had a full range of motion of his cervical spine, no tenderness of his cervical spine, a full range of motion of his back, a lack of lower back pain, a normal gait, and normal strength in his bilateral upper and lower extremities. (Tr. at 622, 626, 629-31.)

On July 9, 2014, after his alleged onset date, Benefield presented to Highlands Medical Center after a minor car accident. (Tr. at 678.) He received a CT scan, where he was diagnosed with compression fractures and discogenic degenerative disease with findings at various spine levels being mild to moderate. (Tr. at 675.) Moreover, Benefield told his providers that his pain was able to be alleviated with medication, which allowed him to engage in activities of daily living. (Tr. at 680, 702.) In addition, as the ALJ

noted, Benefield's treatment plan was conservative, consisting of medication to reduce his pain levels, and he was advised to engage in muscle strengthening exercises. (Tr. at 699.)

Ultimately, none of these medical providers found limitations in Benefield's ability to work greater than the limitations provided by the ALJ in the RFC. The ALJ's decision to discount Benefield's allegations of not being able to work due to back and knee pain is supported by substantial objective medical evidence, including the diagnostic test results, physical examination findings, conservative treatment, improvement with treatment, and reported activity. Indeed, the ALJ acknowledged that the record showed Benefield had physical impairments, but his impairments would not prevent him from working altogether. (Tr. at 30.)

In fact, Benefield himself testified that if there was a job available, where he was sitting down, but could stand up or sit down when he felt like it, and where he was at a table assembling or sorting objects that did not weigh more than twenty pounds; he might be able to perform the job. (Tr. at 31, 52.)

Benefield argues that the ALJ did not consider his longitudinal treatment history, but the ALJ considered X-rays taken prior to the alleged

onset date of 2014. Benefield received very little treatment between his alleged onset date and the date he was last insured. Therefore, the ALJ properly considered the 2011 evidence to partially evaluate Benefield's complaints and determine the impact of his impairments. *See* 20 C.F.R. § 404.1545(a)(3) (ALJ considers all relevant evidence to determine claim).

Benefield also claims that the ALJ misrepresented the MRI results of his spine in 2012. But the ALJ also considered the MRI results from June 2012. The ALJ stated that the MRI showed "'mild to moderate chronic compression fracture and multi-level degenerative change." (Tr. at 29.) The ALJ's summary of the MRI comes directly from the MRI records. (Tr. at 484.) While Benefield argues the ALJ should have discussed the underlying details, the ALJ is not required to discuss every piece of evidence. *Mitchell*, 771 F.3d at 782; *see also Herron v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 781, 787 (11th Cir. 2016) ("The ALJ's RFC assessment was not required to account for every piece of evidence."). Additionally, Benefield continued to work for another two years doing medium labor jobs despite the results of the MRI. (Tr. at 333, 555.) Specifically, Benefield told a physician that he works for a landscaping company and that he has a "very busy and physical job." (Tr. at 555.)

Benefield believes that his persistent seeking of treatment demonstrates that his complaints were fully reasonable and that he was limited to sedentary work. (Tr. at 29-31.) However, the evaluation of a claimant's subjective complaints is the province of the ALJ. *See Mitchell*, 771 F.3d at 782.

Here, the ALJ did not disregard Benefield's pain, but instead determined that based on the evidence of record that Benefield's pain does not prevent him from working. (Tr. at 32.) The ALJ's evaluation of Benefield is supported by citation to specific evidence that articulates explicit reasons for discounting Benefield's testimony. *See Dyer*, 395 F.3d at 1212; *Wilson*, 284 F.3d at 1226.

## IV. Conclusion

Upon review of the administrative record, and considering Benefield's argument, this Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** on March 5, 2020.

_____
L. Scott Coogler
United States District Judge
201416